IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **Irene P.,** | : | |
| **Plaintiff,** | : | |
| | | Case No. 1:22-cv-00131-TPK |
| vs. | : | |
| | : | **Magistrate Judge Kemp** |
| **Commissioner of Social Security,** | : | |
| **Defendant.** | : | |

**OPINION AND ORDER**

Plaintiff filed this action seeking review of a final decision of the Commissioner of Social Security. That decision, issued by the Appeals Council on December 6, 2021, denied her application for social security disability benefits. Plaintiff filed a statement of errors on June 28, 2022 (Doc. 10) to which the Commissioner responded on August 1, 2022 (Doc. 11). For the following reasons, the Court will **SUSTAIN** Plaintiff's statement of errors and **REMAND** this case to the Commissioner pursuant to 42 U.S.C. §405(g), sentence four.

**I. INTRODUCTION**

Plaintiff filed her application on December 5, 2019, alleging that she became disabled on August 14, 2019. After administrative denials of her claim, Plaintiff was given a hearing before an Administrative Law Judge on May 18, 2021. Plaintiff and a vocational expert, Jeffrey B. Barrett, testified at the hearing.

In a decision dated June 9, 2021, the ALJ determined that Plaintiff was not entitled to benefits. He first found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2024, and that she had not engaged in substantial gainful activity since her alleged onset date. The ALJ next concluded that Plaintiff suffered from severe impairments including degenerative changes in the cervical and lumbar spine with radiculopathy; post-concussive syndrome/mild traumatic brain injury; vasovagal syndrome with post-traumatic migraine headaches/cervicalgia; occipital neuralgia; depression; anxiety; and post-traumatic stress disorder. However, the ALJ also found that none of these impairments, taken singly or in combination, met the criteria for disability found in the Listing of Impairments.

Moving to the next step of the sequential evaluation process, the ALJ found that, during the relevant time period, Plaintiff could perform a reduced range of light work. She could not

climb ladders, ropes, or scaffolds, nor could she kneel or crawl, but she could occasionally stoop, crouch, balance, and climb ramps and stairs. Additionally, she had to avoid concentrated exposure to extremes of temperature and humidity and even moderate exposure to bright lights and loud noises. Lastly, she needed to avoid all hazards and could perform only simple, routine tasks with simple, routine instructions.

Moving on with the process, the ALJ determined that with these limitations, Plaintiff could not, based on testimony given by the vocational expert, perform her past relevant work as a bank customer service representative and bank teller. However, the ALJ found that there were a substantial number of jobs she could do, including cashier II, ticket seller, and investigator of dealer accounts. As a result, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act.

In her statement of errors, Plaintiff argues that the ALJ did not properly consider the combined effects of her impairments, including fatigue and migraines; did not properly determine the functional limitations arising from her mental impairments; improperly evaluated the opinion evidence; did not properly weigh her subjective complaints; and did not include all of her limitations in the hypothetical question posed to the vocational expert.

## II. STANDARD OF REVIEW

As this Court said in *Jeter v. Comm'r of Soc. Sec. Admin.*, 2020 WL 5587115, at *1–2 (S.D. Ohio Sept. 18, 2020)**,**

> Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec*., 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.' " *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance...." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.
>
> The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial

evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.' " *Rabbers,* 582 F.3d at 651 [quotations and citations omitted].

### III.  FACTUAL BACKGROUND

#### A.  Hearing Testimony

Plaintiff, who was 50 years old at the time of the administrative hearing, testified, first, that she had a driver's license but no longer drove.  She had had an automobile accident where the airbag deployed, and since then she had experienced what some doctors had described as post-concussion syndrome.  She was hospitalized for seven days after the accident.  Plaintiff said she was still having headaches on a daily basis and took medication as prescribed by her neurologist.

When asked to describe her headaches, Plaintiff said that she often experienced nausea and sometimes needed to lie down and sleep.  The headaches could also affect her ability to walk.  However, the most significant symptom was fatigue.  She went to physical therapy for her headaches but it exhausted her.  Plaintiff stated that she was able to lift ten pounds but could not hold such an object for long or lift it continuously.  Activity made her symptoms worse, especially balancing, and she became fatigued after standing for as little as five minutes.  She was also sensitive to light and noise.  She also said she had bad days where she had a headache as well as back and neck pain, depression, and anxiety, and this happened more days than not.

The vocational expert, Jeffrey Barrett, was asked questions about someone with Plaintiff's vocational profile who could do a reduced range of light work with various postural and environmental restrictions.  In response, Mr. Barrett said that such a person could do Plaintiff's past work, but that would change if she were also limited to the performance of simple, repetitive tasks.  He further testified that even with that restriction, the person could do light, unskilled jobs like cashier II, ticket seller, and investigator of dealer accounts.  He also gave the numbers for those jobs as they existed in the national economy.  Additionally, he said that a person who needed to alternate sitting and standing could do those jobs and that the first two did not allow the worker to be off task for any significant period of time, but the third would accommodate some level of being off task.  Lastly, he testified that more than six to ten days of absence on an annual basis would not be tolerated.

#### B.  Relevant Medical Records

The relevant medical records show the following. Plaintiff was admitted to the hospital

in August, 2019, following a motor vehicle accident. She said that she had become dizzy after donating blood and that led to the accident. She was described as having "cognitive dysfunction related to concussion," (Tr. 364), and discharged after a seven-day stay. Follow-up notes indicate that she continued to experience headaches, neck pain, problems with her memory and concentration, and dizziness, and she was diagnosed with post-concussive syndrome. Her symptoms did improve with an occipital nerve block. As of March of 2020, she was still reporting headaches which were not controlled with medication, and a note from that month stated that her chronic migraine syndrome was causing right eye pain.

On March 13, 2020, Plaintiff underwent a neurological evaluation done by Dr. Sabile. The diagnostic impressions included major depressive disorder and generalized anxiety disorder. Her mood at that time was very depressed and anxious and she gave up easily on the testing. She showed impaired attention, processing, and speed skills and also had problems with executive functioning and memory. Her effort was not optimal but that was attributed to her anxiety and depression. By June of that year, she was still reporting fogginess and difficulty with cognitive tasks as well as significant neck and back pain. Those symptoms persisted throughout the year, with a neurology report from December, 2020, still showing dizziness, fatigue, and memory deficits. A report from Dr. Vu of the Florida Behavioral Institute dated December 1, 2020, listed essentially the same symptoms, including difficulties with concentration, brain fog, depression, anxiety, fatigue, and self-isolation. Plaintiff did, however, tell Dr. Moran, another treating source, the month before that she was able to walk about a mile per day and that her headaches had decreased, although she still did not think she could go back to work.

Additional treatment notes from 2021 do show an improvement in Plaintiff's symptoms. Her medication compliance was good. However, she continued to report dizziness, headaches, neck and back pain, and nerve pain. In April, she said she was experiencing memory issues, but a May, 2021 treatment note shows continuous improvement of her symptoms.

### C. Opinion Evidence

Dr. Tobon, a neurologist, conducted an independent medical examination on May 5, 2020. Plaintiff's symptoms included nightmares, flashbacks, constant headaches accompanied by nausea, vomiting, dizziness, and blurred vision. She also described memory problems. Dr. Tobon's impressions included mild traumatic brain injury with post-traumatic intractable headaches and post-traumatic cervical vestibulopathy. She concluded that Plaintiff might miss work intermittently during an acute headache attack. (Tr. 549-55).

Plaintiff also saw Dr. Berman on July 1, 2020, for a disability physical examination. She reported largely the same cognitive difficulties and also said that she could lift only eight pounds and stand for five minutes due to fatigue. Her physical examination was essentially normal, although she did have to discontinue it for a time due to nausea. Dr. Berman's impressions included a history of concussion, post-concussion syndrome, fatigue, dizziness, and unspecified mental issues. He did not evaluate her functional ability. (Tr. 676-78).

Dr. Vu completed a medical source statement - mental form on June 9, 2020, indicating that she had been seeing Plaintiff for about four months. Dr. Vu believed Plaintiff had marked or extreme limitations regarding mental functioning in multiple areas and attributed these limitations to severe anxiety and depression. (Tr. 854-56).

There are also opinions from state agency reviewers. On July 7, 2020, Dr. Renny expressed the opinion that Plaintiff could do light work with various postural and environmental restrictions, and on September 14, 2020, Dr. Rodriguez reached the same conclusion. As to mental impairments and limitations, Drs. Tessler and Rowan concluded, on May 12, 2020 and August 27, 2020, respectively, that Plaintiff had some moderate limitations in her ability to deal with detailed instructions and with work stress and was moderately impaired in her ability to deal with the public. Lastly, one of Plaintiff's treating sources, Dr. Moran, stated on two separate occasions that Plaintiff was unable to work or was unable to tolerate work activities.

## IV. DISCUSSION

### A. The ALJ's Decision

After determining that Plaintiff's subjective report of symptoms was not entirely consistent with the medical and other evidence of record, the ALJ proceeded to analyze the medical records. He noted that her hospital course revealed some evidence of cognitive dysfunction secondary to concussion and that her symptoms of headaches, dizziness, and difficulty processing information persisted thereafter. The ALJ also acknowledged that she continually sought treatment from multiple sources, although most objective tests were normal and some treatment notes indicated that her symptoms were improving. He also pointed out that the findings made by Dr. Sabile were viewed as underestimating Plaintiff's intellectual functioning. Finally, he observed that few of the treating sources had expressed any opinion about functional limitations.

Turning to the opinion evidence, the ALJ dismissed the opinions of both Dr. Moran and Dr. Vu as vague or as consisting of legal conclusions rather than descriptions of what Plaintiff was able to do. He further described Dr. Vu's opinion about extreme limitations as being supported "only by nine short lines of handwritten, somewhat illegible text" which appeared to place heavy reliance on Plaintiff's subjective report of symptoms as opposed to either Dr. Vu's observations or those made by other treatment providers. (Tr. 20). He viewed Dr. Tobon's statement about Plaintiff's need to miss work on an intermittent basis due to headaches as speculative. Lastly, he gave partial weight to the various state agency reviewers' opinions, finding the physical assessments more persuasive than the mental assessments, which he said were "flawed in that they rely on undefined, vague terms like 'somewhat limited' and 'limited.'" *Id*.

### B. Plaintiff's Arguments

### 1. Migraines

In this section of her statement of errors, Plaintiff, for the most part, recites her symptoms as she reported them to her medical providers, but she concludes her argument by contending that the ALJ did not follow SSR 19-4p in his evaluation of this impairment, nor did he consider her migraines under Section 11.02 of the Listing of Impairments. The Commissioner responds that there are no medical opinions stating that Plaintiff's migraines would prevent her from working with accommodations for exposure to bright lights, loud noises, and hazards, that the ALJ did, in fact, evaluate her condition under SSR 19-4p, and that Section 11.02 is inapplicable to this case because it deals with headaches not caused by another medical condition.

SSR 19-4p addresses the medical impairment of "primary headache disorder," which is defined in the ruling as headaches which "occur independently and are not caused by another medical condition." They are diagnosed "only after excluding alternative medical and physical causes of a person's symptoms." *Id*. When primary headache disorder is found to be a medically determinable impairment, an ALJ must evaluate whether it meets the criteria set out in the Listing of Impairments, and, if not, must "consider and discuss the limiting effects of all impairments and any related symptoms when assessing a person's [residual functional capacity]." *Id*. The Ruling further notes that

> [p]rimary headache disorder is not a listed impairment, however, it may medically equal Listing 11.02, pursuant to SSR 19-4p. For Listing 11.02B, we consider: a detailed description from an acceptable medical source of a typical headache event, including associated phenomena, such as aura, duration, intensity, and accompanying symptoms; the frequency of headache events; adherence to prescribed treatment; side effects of treatment, such as drowsiness, confusion, or inattention; and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day, a need for a darkened quiet room, having to lie down without moving, or other related needs and limitations. For Listing 11.02D, we consider the overall effects of the primary headache disorder on functioning results in marked limitations in: physical functioning; understanding, remembering or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself.

Here, it appears undisputed that Plaintiff's headaches were caused by the automobile accident and resulting head injury. SSR 19-4p states specifically that "[w]e will not establish secondary headaches (for example, headaches attributed to trauma or injury to the head ...) as [medically determinable impairments] because secondary headaches are symptoms of another underlying medical condition." The ALJ found that the medically determinable impairment at issue was "vasovagal syndrome with post-traumatic migraine headaches/cervicalgia," indicating clearly that the migraines were secondary to the head trauma which Plaintiff suffered in the accident. Under the explicit language of the ruling, the ALJ's obligation was to "evaluate the

underlying medical condition as the MDI." Consequently, the ALJ need not have performed an evaluation of this condition under Section 11.02 of the Listing of Impairments, and his failure to do so cannot constitute reversible error.

### 2. Fatigue

Plaintiff asserts, in this argument, that her fatigue is her most limiting physical impairment. She points out that she listed it on her initial application and that it is documented both in her testimony and in the medical records, and that if the ALJ had accepted this evidence, limiting her to sedentary work, she would qualify for benefits. She bolsters this contention in her reply by asserting that, at both the initial and reconsideration stages, there is a statement that her subjective report of symptoms of fatigue (and the limitations caused by her migraines) was supported by the objective evidence. *See* Tr. 72, 94-95. The Commissioner responds that the ALJ was not required to accept her subjective testimony on this issue and that the state agency physicians and psychologists considered this complaint but still found her capable of performing the exertional demands of light work activity.

It is not entirely clear what legal error Plaintiff claims the ALJ committed here. It is certainly true that subjective complaints, by themselves, cannot form the basis for a finding of disability. Plaintiff appears to assert that because both state agency psychological reviewers answered "yes" to the question of whether there was objective medical evidence to support her reported symptoms, the ALJ was precluded from making a finding that her self-reported symptoms were not entirely consistent with the evidence. Apart from the fact that the statements made at the initial and reconsideration stages did not even evaluate her complaint of fatigue (they specifically listed the symptoms evaluated as pain, loss of sensation, sustained concentration and persistence limitations, and ability to adapt limitations), there is simply no authority (and Plaintiff cites none) for the proposition that because an initial administrative finding has been made that objective evidence supports the existence of symptoms, the ALJ cannot determine (as part of a *de novo* review) the extent to which that and other evidence supports a finding that those symptoms are sufficiently severe to render a claimant disabled. There is therefore no merit in this second claim.

### 3. The Nervous and Mental Limitations

The primary focus of Plaintiff's third argument is social limitations. She notes that there is a finding in Dr. Rowan's opinion that Plaintiff is moderately limited in her ability to interact with the general public, *see* Tr. 100-01 (Dr. Tessler made the same finding at Tr. 77) and that the ALJ rejected these findings without giving an adequate explanation. The Commissioner responds that the ALJ appropriately declined to impose any social interaction limitations because of the vagueness of the state agency reviewer's conclusions.

The ALJ concluded that Plaintiff had only "minimal social limitations." (Tr. 20). Although he did not accept the state agency reviewers' contrary view based on what he described

as their use of "undefined, vague terms like 'somewhat limited' and 'limited,'" those words appear in only the narrative explanation of their findings (and the additional explanation given there clarifies any ambiguity) and they have no relevance to the underlying conclusion reached by both psychologists that Plaintiff has moderate limitations in her ability to interact with the public. The ALJ's decision also refers to his "preceding finding" that Plaintiff had only minimal limitations in this area, *id.*, but it is not clear what finding he was identifying, nor does the ALJ supply any explanation for having reached such a finding.

Based on the record, the Court concludes that the ALJ's decision on this particular issue - that is, the extent to which Plaintiff is able to relate to the general public - is clearly deficient and unsupported by substantial evidence. Because the vocational testimony does not address how such a limitation would affect a person's ability to do the jobs identified by the vocational expert, and at least two of them appear to require frequent interaction with the public, this claim has merit. An order of remand is therefore warranted to address this problem.

### 4. Remaining Claims

Plaintiff's fourth and fifth claims fault the ALJ for his evaluation of the opinions of the two treating sources, Drs. Vu and Moran, and of Plaintiff's subjective testimony concerning her physical limitations, including her ability to stand, walk, and use her hands on a consistent basis. The primary issues the Court sees in this regard are the ALJ's description of Dr. Vu's rationale for her opinion as being "somewhat illegible" and his reliance on the fact that the majority of the treating sources did not conclude that Plaintiff had limiting symptoms. But neither did they say she did not - their treatment notes simply did not address the specific issue of work-related limitations. The absence of statements in those notes is no indication of what those sources may have thought about Plaintiff's limitations and therefore not substantial evidence to support a rejection of the opinions of treating sources who did have such thoughts. Further, if the ALJ was uncertain about the content of an important record from a treating source like Dr. Vu, he could have asked for clarification. While not relying on either of these claims as a basis for a remand, the Court does have some concerns about the ALJ's analysis of the treating source opinions. The remand will give the ALJ an opportunity to give these matter further consideration.

### V. CONCLUSION AND ORDER

For the reasons stated above, the Court **SUSTAINS** Plaintiff's statement of errors and **REMANDS** this case to the Commissioner pursuant to 42 U.S.C. §405(g), sentence four.

    /s/ **Terence P. Kemp**
**Terence P. Kemp**
**United States Magistrate Judge**